No. 30,345.

John R. Brinkley, *Appellee*, v. Morris Fishbein and William S. Yates, *Appellants*.

(8 P. 2d 318.)

Opinion filed March 5, 1932.

*James V. Humphrey, Arthur S. Humphrey,* both of Junction City, *Frank J. Loesch, Timothy J. Scofield, Charles F. Loesch* and *Edward M. Burke,* all of Chicago, Ill., for the appellants.

*James E. Smith, John S. Dean,* both of Topeka, and *James H. Harkless,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for libel. A motion for judgment for defendants on the pleadings was denied, and defendants appeal.

The petition alleged that plaintiff is a regularly licensed physician engaged in the practice of medicine in Geary county, Kansas, and that Fishbein is the editor of the *Journal of the American Medical Association,* in control of the matter published in the *Journal.* Paragraph V of the petition reads as follows:

"That on or about January 14, 1928, the exact date which is unknown to plaintiff, the said Morris Fishbein wrote and became the author of an article which he caused to be published in the said *Journal of American Medical Association,* containing the false, defamatory and libelous matters, to wit: 'John R. Brinkley, quack'; which said false, defamatory and libelous words occurred in large letters as the heading of said article or composition, and that said article or composition contained the further statement:

"'From what has been written, it is obvious that John R. Brinkley is a blatant quack of unsavory professional antecedents.'

"That by the use of the words, 'quack' and 'blatant quack of unsavory professional antecedents,' the said Morris Fishbein meant to say that plaintiff was an impostor and fraud, and that he was engaged in practicing medicine and surgery without a valid and regular license, and that he was wholly without education, skill or training as a physician and surgeon. That the defendants, acting jointly and in conjunction with each other, have caused said publication and written article to be published of and concerning this plaintiff in the county of Geary and state of Kansas, as hereinafter stated."

The petition then alleged that Fishbein caused a reprint of the article to be prepared in pamphlet form, with intent that it should be generally circulated in Kansas; that he caused 100,000 copies to be sent to Kansas and placed in the hands of the Kansas State Medical Association, knowing his act would result in publication; that by his act the pamphlets were placed in circulation in Kansas; that a number of copies came into possession of defendant Yates, who, for the purpose of assisting Fishbein in carrying out his design, maliciously circulated the pamphlet; that defendants entered into a conspiracy with the American Medical Association, the Kansas State Medical Association, and with each other, for the purpose of publishing the pamphlet to injure plaintiff in his good reputation; that the words set forth in paragraph V as defamatory were false, as defendants well knew, and that all of the acts and designs of defendants were malicious.

Defendants moved the court to require plaintiff to set forth the article in its entirety. The motion was allowed, and the entire article was attached to the petition as an exhibit and was made a part of the petition. Defendants answered, making some admissions and otherwise denying generally the allegations of the petition. The innuendo was specifically denied. By way of defense defendants pleaded truth of the words which the petition alleged were false and defamatory, and pleaded that the entire article was published without malice, with good motives, and for justifiable ends, and so was privileged. Plaintiff replied. Defendants then moved for judgment on the pleadings and, as indicated, the motion was denied.

Defendants say in their brief that the article gave the life history, misadventures, spurious claims of medical degrees and education, and evil professional practices of plaintiff. This is a mild description, but it may be accepted, and it is not necessary either to reprint the article or to reproduce excerpts from it.

Defendants propose the following questions for consideration:

"1. Can the derivative 'headline' and 'conclusion' be held to be libelous if the imputation conveyed by them is fully warranted by the true narrated facts of the article?

"2. Are the narrated facts of the article, not challenged by the proceedings, to be taken as true for the purpose of the case?

"3. Is the determination of whether the 'headline' and 'conclusion' fairly reflect the contents of the article a question of law for the court?

"4. Are the challenged 'headline' and 'conclusion' in harmony with the unchallenged contents of the article?"

Answering the third query first, it may be said that, generally speaking, interpretation of a writing alleged to be libelous is a matter of law for the court. The court should decide whether words are actionable *per se*. The court should decide whether words could not possibly be defamatory. The court should decide whether words may fairly be susceptible of two meanings, one innocent and the other defamatory. To do this the court must consider and determine the effect which one part of a composition may have upon the meaning of other parts and upon the whole, and the third query is answered in the affirmative.

The court cannot answer the fourth query as it is framed, because it speaks of the "unchallenged contents" of the article. The court can say that the contents of the body of the article were not, by express reference to them, challenged as false; and the court can say that the headline and conclusion are in harmony with the contents

of the body of the article, considering the body of the article in its entirety.

The court cannot answer the first query as it is framed, because it speaks of the "true narrated facts" of the body of the article. All the court has before it is the narrative. Whether the statements made in the narrative as matters of fact are true statements of fact the court has no information. Disclosures of truth and fact must await the result of a trial. Amending the first question to read, "Can the headline and conclusion be libelous if the imputation which they convey is fully warranted by the statements made as statements of fact in the body of the article?" the court has no hesitation in answering in the affirmative.

Amending the second query to read, "Are the narrated facts of the article to be taken as true for the purpose of the case?" the court has no hesitation in answering in the negative.

Defendants say, and properly say, the article should be considered as a whole. This is very essential in many cases, because the poison of headline or conclusion may be so neutralized by the body of the article that it would not injuriously affect reputation. In this instance headline and conclusion were both libelous *per se*. When the body of the article came in it did not sterilize the headline and conclusion and render them innocuous. A perusal of the body of the article would disclose an accumulation of exact information supporting the defamatory imputations of headline and conclusion; and instead of weakening the defamatory character of the headline and the conclusion the body of the article strengthened them. Plaintiff tendered no issue respecting truth of the contents of the body of the article, in the petition; defendants raised no issue respecting truth of the contents of the body of the article, in their answers; and the body of the article simply came before the court so that headline and conclusion might be properly appraised with respect to what notion a reader would get of plaintiff if, besides reading headline and conclusion, he also read the body of the article.

Reference has been made to the "unchallenged contents" of the body of the article, and the first query refers to "derivative headline and conclusion." Headline and conclusion were not comments by the author on something originating outside the writing. They were structural portions of the author's own composite creation. The headline was a very compact, condensed statement of the pur-

port of the article to follow. The conclusion was a compact, condensed, emphatic statement of the purport of what preceded it. Both headline and conclusion correctly generalized the particulars contained in the body of the article. The petition alleged that headline and conclusion were false, and a scrupulously sound epitome cannot be false and that which is epitomized be true. Manifestly, truth of the statements made as statements of fact in the body of the article was not admitted, and for the purpose of the case truth of the body of the article was challenged.

While not pertinent to the question whether the motion for judgment should have been sustained, the briefs discuss the innuendo of the petition. The function of the innuendo in a petition charging libel has frequently been explained by this court, and it is not necessary to do so again, or to quote from the decisions. It seems from the decided cases that the word "quack" may have a variety of meanings. In this instance the words "quack" and "blatant quack of unsavory professional antecedents," interpreted as they now must be by the body of the article, are capable of conveying the meaning attributed to them by the innuendo. Whether they were so understood by readers is a question of fact for the jury.

The article did say "Brinkley also obtained a license to practice in Tennessee in 1915, and in Kansas in 1916." The body of the article told how plaintiff "got" and "obtained" diplomas by purchase and from diploma mills. This court is constrained to say that, considering the article as a whole, the fair tendency of the word "obtained," as used with respect to license to practice, was to impute to plaintiff conduct of the same disreputable kind.

The briefs of the parties would lead the court far afield. Some of the questions discussed may never arise. The substantial question in the case is whether the statements made in the body of the article as statements of fact are to be taken as true. The court's opinion on that subject has been sufficiently indicated.

The judgment of the district court is affirmed.