GRANT CREEKMORE, Appellant, v. CLEO RUNNELS, R. H. SEABOUGH, F. S. TUGGLE, OSCAR FITTERER, LAWRENCE TINGLER, CARL MORRISON, Respondents, No. 41428—224 S. W. (2d) 1007.

Division Two; December 12, 1949.

*R. Leroy Miller* and *Robert C. Frith* for appellant.

*Charles D. Brandom* and *Kitt & Lintner* for respondents.

1022

BARRETT, C.—In this action for libel and slander the plaintiff, Grant Creekmore, prays for $25,000.00 actual damages and $50,000.00 punitive damages. Upon his refusal to amend his petition or to plead further, the trial court sustained the defendants' motion to dismiss his cause for the reason that his petition did not state a cause of action and he appeals from the judgment of dismissal. The plaintiff, admittedly, does not allege or claim that the language was defamatory of him in his individual capacity and he does not plead any special loss or injury and the essential issue and question for decision is whether, in the circumstances alleged in the petition, the words written and spoken of the plaintiff, fairly construed, are in and of themselves defamatory and will necessarily occasion loss to the plaintiff in his capacity, character and profession of a clergyman. It is assumed for the purposes of this opinion that the plaintiff sufficiently alleged his capacity and profession of an ordained Baptist minister even though it is not alleged that he was actively engaged in his calling when the language was published. The petition

alleges and describes the relationship of the parties in this language: "Plaintiff states that he is a regularly ordained minister of the Baptist Church and was on February 4, 1948, a member of the Gallatin Baptist Church; that defendants, F. S. Tuggle, Oscar Fitterer, Lawrence Tingler and Carl Morrison are members of the Board of Deacons of said church; that defendant Cleo Runnells is the church clerk of said church; that R. H. Seabough is the regular minister of said church." The alleged maliciously false and defamatory language, published to the church membership by the deacons, the clerk and the pastor, was the following letter to the plaintiff:

"Mr. Grant Creekmore
Gallatin, Mo.
Dear Sir:
This is a written notice for you to appear at the regular business session of the Gallatin Baptist church Wednesday evening February 4, 1948 at 7:30 P.M. to show cause why the church should not withdraw the hand of fellowship from you on grounds of:
1. Heresy
2. Disturbing the peace and union of the church
3. Refusing to hear the church in its efforts to restore peace."

The appellant contends, and it is the essence of this case, that it is libelous per se to charge a clergyman with heresy. In this connection it is urged that there is a difference in clergymen and other professions and that words may be actionable per se when used with respect to a clergyman although the same words would not be actionable without a charge of special damages if spoken of others. 53 C. J. S., Sec. 39, p. 87. Defamatory imputations affecting persons in their special occupation, business or profession are, of course, actionable without allegation or proof of special damage. 33 Am. Jur., Sec. 63, p. 80. But it cannot be that there is a special rule applicable only to clergymen and not to other professions. It may be, because of his exalted position, the dignity of his office and his assumed impeccable character, that a clergyman is more susceptible to injury by the derogatory imputations of language and in this there may be a difference in the clergyman and other professions or callings, but the special character of his office does not enhance his right to protection. Townshend, Slander & Libel, Sec. 181, p. 222. Defamatory imputations concerning and affecting a clergyman in his professional character are libelous per se (33 Am. Jur., Sec. 75, p. 87) but it does not follow that all disparaging language or "words which tend to bring a clergyman into disrepute or which merely impute that he has done something wrong are actionable without proof of special damage." Newell, Slander & Libel, Sec. 144, p. 176. The language must consist of an imputation prejudicial to him in his special character

as a clergyman, an imputation impeaching his skill or knowledge, one that tends to disqualify him and render him unfit to fulfill the duties of his office as a clergyman. To be actionable per se the language must impute a lack of integrity or misconduct importing a moral or mental unfitness in him to discharge his duties as a clergyman. Baldwin v. Walser, 41 Mo. A. 243, 251; annotations 53 A. L. R. 637; 20 Ann. Cas. 718; 28 L. R. A. (N. S.) 152.

Thus, plainly, a false charge that a minister had seduced a maid would necessarily carry the imputation that he was morally unfit to fulfill the duties of his office. Warren v. Pulitzer Publishing Co., 336 Mo. 184, 78 S. W. (2) 404. And to unjustly say of a priest that he "is not responsible, . . . or he may not be entirely of a sane mind," as of course implies that he lacked the mental fitness and capacity necessary to fulfill the duties of his office of a priest. Hellstern v. Katzer, 103 Wis. 391, 79 N. W. 429. Likewise to print of a Baptist minister that "There has not to our knowledge appeared in public within the memory of the present generation of North Carolina a more ignorant man than Pentuff, or one less charitable" and that he was an "immigrant ignoramus" plainly connotes his mental unfitness as a clergyman. Pentuff v. Park, 194 N. C. 146, ▮▮▮▮ 138 S. E. 616. And to say of a Methodist minister, "I have always known that he was unfit for the ministry and an improper person to be allowed to preach, and was too dangerous and indiscreet" imputes a mental unfitness and perhaps a moral unfitness to successfully discharge the duties of his office. Flanders v. Daley, 120 Ga. 885, 48 S. E. 327. In Shurtleff v. Parker, 130 Mass. 293, it was assumed that the postal card message, "Dear Brother: If you can, do stop this man from making more trouble in the churches. He is unfit for the office and work of the ministry. He belongs to no organization here, and we cannot reach him." impeached the professional ability and character of a Congregationalist minister and was therefore libelous per se. So, when the defendant wrote of an applicant for a pulpit, "I would not have anything to do with him or touch him with a ten-foot pole," it was held that the language implied and charged that the minister possessed habits and qualities rendering him entirely unfit to be the pastor of a church congregation. Cole v. Millspaugh, 111 Minn. 159, 126 N. W. 626.

Formerly, in countries with established churches, heresy was a crime and consisted in refusal to accept any prescribed article of faith (Webster's New International Dictionary) and in those days, of course, it was indeed serious and prejudicial to charge a clergyman with heresy. But heresy is no longer an offense against the state and as an offense against the church is not now regarded as necessarily "excluding from the fellowship of believers those who thus come under the ban of ecclesiastical censure or disapproval." Encyclopedia Americana, Vol. 14, p. 128. The dictionary definition of

"heresy" is "Religious opinion opposed to the authorized doctrinal standards of any particular church, especially when held by a person holding the same general faith, and tending to promote schism or separation; lack of orthodox or sound belief; rejection of, or erroneous belief in regard to, some fundamental religious doctrine or truth; heterodoxy . . . An opinion held in opposition to the established or commonly received doctrine, and tending to promote division or dissension;—usually said in reproach." Webster's New International Dictionary. The Century Dictionary includes this in its definition of "heresy": "Specifically, in theology, an opinion or a doctrine rejected by the authorities of a church as contrary to the established creed of that church; an interpretation or a theological view of a sacred writing or other standard of religion, or of any distinctive part of it, opposed to that authoritatively established or generally accepted : . . ."

It must be emphasized, as we have said, that language concerning a minister is defamatory and per se injurious to him in his office as a minister if it impeaches his skill or knowledge, imputes a lack of integrity or moral character and has a tendency to disqualify him and render him unfit to fulfill the duties of his office. "Whether language has that tendency depends, among other factors, upon the temper of the times, the current of contemporary public opinion, with the result that words, harmless in one age, in one community, may be highly damaging to reputation at another time or in a different place" (Mencher v. Chesley, 297 N. Y. 94, 100, 75 N. E. (2) 257) and, vice versa, words calumnious in one generation may impute no obloquy in another. It may be conceded that in some connotations a charge of "heresy," if its suggestive significance is explicitly set forth, would be injurious to a clergyman in his professional character and office but in the present it may not be said that the charge and publication of such a broad, nebulous abstraction is in and of itself so defamatory as to necessarily injure him in his profession. In Nunnery v. Bailey, 65 Okla. 260, 166 Pac. 82, the minutes of the Granite Baptist Church contained this language : "Brother Burnett read the charges against Brother Nunnery. A motion to sustain charges as read voted unanimous. Motion and second that the church withdraw fellowship from Brother Nunnery. Vote was unanimous." It was held that publishing the fact of "charges" and withdrawal of the hand of fellowship with no intimation of their import, did not necessarily tend to impair confidence in the integrity, character or professional ability of the minister (Brother Nunnery) and was therefore not actionable in the absence of an allegation of special damages. And here, likewise, in the absence of an allegation of some special loss or injury, it may not be said that the general charge of "heresy" in a church disciplinary proceeding is libelous and actionable per se.

Since the plaintiff's petition did not state a cause of action the trial court did not err in overruling his motion for judgment on the pleadings for lack of a timely answer by the defendants. Jones v. Williams, 357 Mo. 531, 209 S. W. (2) 907. Accordingly the judgment is affirmed. *Westhue*s and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.