MARSHALL v. NATIONAL POLICE
GAZETTE CORP. et al.
No. 14407.

United States Court of Appeals
Eighth Circuit.
April 17, 1952.

Walter A. Raymond, Kansas City, Mo. (Fred Bredehoft, Harry C. Clark, Louis W. Krings and Keith Martin, all of Kansas City, Mo., on the brief), for appellant.

Charles B. Blackmar, Kansas City, Mo. (Henry I. Eager, Kansas City, Mo., and Stanley M. Estrow, New York City, on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

GARDNER, Chief Judge.

This was an action brought by Al Marshall, appellant, against the National Police Gazette Corporation and American News Company to recover damages for an allegedly libelous article published by defendant National Police Gazette Corporation and circulated by defendant American News Company. The parties will be referred to as they appeared in the trial court.

Plaintiff alleged in substance that he is and for many years has been a citizen and resident of Kansas City, Missouri, and that for the past ten years he had been employed as a city beer salesman and was the only beer salesman in said city bearing the name of Al Marshall; that the defendant National Police Gazette Corporation is engaged in the printing, publishing, circulating and selling of an illustrated journal known as the National Police Gazette, which has a large general circulation throughout the United States, including the State of Missouri, and the City of Kansas City, Missouri; that defendant American News Company is and was at all times in the complaint mentioned the local agent and distributor for the National Police Gazette; that on or about April 5, 1950, Charles Binaggio, notorious as a factional political leader in Kansas City's North End, and as a gambling racketeer and gangland leader, with his bodyguard, Charles Gargotta, a notorious gunman and gangster, were assassinated by unknown persons in Binaggio's factional political headquarters in Kansas City, Missouri; that the assassination and notorious reputations of the victims were given great newspaper and magazine publicity throughout the State of Missouri and the United States; that shortly thereafter the United States Senate launched an investigation into organized crime, especially with respect to the connection between organized crime and politics; that the Senate Committee spent considerable time investigating and taking testimony bearing on said questions in Kansas City and elsewhere in the State of Missouri and that the activities in investigating these assassinations were given great newspaper and magazine publicity in Kansas City and throughout the United States. That in the October, 1950 issue of the National Police Gazette the cover page bore the words, "Exclusive Unrevealed Facts of the Binaggio Murder!" That on pages 10 and 11 of said issue appeared a feature article entitled, "Who Murdered Charles Binaggio? Unrevealed Facts of the mysterious slaying of Kansas City's gang czar and political boss." A copy of this article is attached to the complaint and by proper reference made a part thereof. That thousands of copies of said magazine were sold, published and circulated in Kansas City, Missouri, and elsewhere; that in said article the defendants wilfully and maliciously published of and concerning the plaintiff the following defamatory and libelous printed matter, to-wit: "It was about March 1st that Binaggio got tired of the rackets and politics and wanted something legit. He approached Markowitz about going into business with him in New Mexico. Markowitz thought it was a joke. Apparently it was no joke. Binaggio

went to Santa Fe with Al Marshall, a beer salesman (meaning this plaintiff, and generally so understood by residents of Kansas City), to look over some legitimate propositions (thereby meaning that plaintiff was a friend, companion and confidant of Binaggio and interested in forming some kind of business association with Binaggio in New Mexico)." That said statements of and concerning plaintiff were false and untrue in that plaintiff was not a friend, companion or confidant of said Binaggio and plaintiff did not go to Santa Fe with Binaggio as therein stated; that the publication of said false statements concerning plaintiff tended to and did provoke him to wrath, tended to and did expose him to public hatred, contempt and ridicule and tended to and did deprive him of the benefit of public confidence and social intercourse within the meaning of Section 4758, Revised Statutes of Missouri, 1939 Code, Section 559.410 RSMo 1949, V.A.M.S., and were defamatory and libelous. It is then alleged that as a result of this publication plaintiff was damaged in his good name, fame and reputation and that he suffered pecuniary damages because of the publication and circulation of the said article.

The defendants moved for a dismissal of the action for the reason that the complaint failed to state a claim against the defendants upon which any relief could be granted. The court sustained the motion and entered an order dismissing the action with prejudice, from which order plaintiff prosecutes this appeal. The case has been well briefed and ably argued in this court.

As the motion to dismiss for failure of the complaint to state a claim on which relief could be granted was sustained, the allegations of the complaint should be viewed in a light most favorable to the plaintiff. Cool v. International Shoe Co., 8 Cir., 142 F.2d 318. If, however, it appears that the publication is incapable of a libelous meaning, either on its face or by means of reasonable innuendoes, then a motion to dismiss should be sustained. Heller v. Pulitzer Pub. Co., 153 Mo. 205, 54 S.W. 457; Diener v. Star-Chronicle Pub. Co., 230 Mo. 613, 132 S.W. 1143, 33 L.R.A.,N.S., 216.

Here the complaint set forth not only the language alleged to be libelous but the entire published article in which this language appears. The motion to dismiss admits the allegations of fact set out in the complaint but not the allegations which constitute conclusions or the matters alleged as innuendoes or inducements, nor does such motion admit any unfair or forced construction put upon the language used. Libel is defined by the Missouri statute as "the malicious dafamation of a person made public by any printing, writing, sign, picture, representation or effigy tending to provoke him to wrath or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse * *." The case is, of course, governed by the law of Missouri. The Supreme Court of Missouri has held that the allegedly libelous language must be defamatory in its nature in order to support an action for defamation and if a publication can not reasonably bear a defamatory meaning it can not be the basis for an action for libel. Diener v. Star-Chronicle Pub. Co., supra; Hylsky v. Globe Democrat Pub. Co., 348 Mo. 83, 152 S.W.2d 119; Julian v. Kansas City Star Co., 209 Mo. 35, 107 S.W. 496; Walsh v. Pulitzer Pub. Co., 250 Mo. 142, 157 S.W. 326; Creekmore v. Runnels, 359 Mo. 1020, 224 S.W.2d 1007.

In Diener v. Star-Chronicle Publishing Co., supra [230 Mo. 613, 132 S.W. 1145], in which a demurrer to the complaint had been sustained by the trial court, the Supreme Court of Missouri, among other things, said: "A demurrer lies to a petition sounding in tort for libel the same as to any other petition, if certain conditions are present—this, in spite of the constitutional provision (article 2, § 14, of the Bill of Rights [V.A.M.S.Const.1875]) that, in libel, 'the jury, under the direction of the court shall determine the law and the facts.' To illustrate: If A. sue B. for libel without matter of innuendo or inducement on the theory that the words published are libelous per se, and they are not libelous per se, the sufficiency of A.'s petition may be challenged by demurrer, and is for the court. Again, if A. sue B.

for libel for words not actionable per se, and the pleader, claiming they bear a hidden or latent libelous meaning because of certain extrinsic circumstances, sets such extrinsic circumstances forth by prefatory allegations by way of inducement and follows up the libelous words by an innuendo applying the words to the matter so pleaded by way of inducement, in such cases, such innuendo should not be a forced and unnatural construction and application of the words, but a reasonable and natural construction and application of them. A vice of that sort can be reached by demurrer, and is for the court. Again, if the words of the libel are ambiguous, and the pleader can only put a libelous tang or edge upon them by a wholly unnatural and forced construction and tries to do so by an innuendo, that vice can be reached by demurrer, and is for the court. So, if the petition be not challenged by way of demurrer, in limine, and the case be fully devoloped on trial, and if under the pleadings and evidence no case is made the court may take the case from the jury by a peremptory instruction in the nature of a demurrer. So far as above indicated, libel suits, though sui generis (in a sense), are subject to those rules of practice found wise and useful in administering justice generally in the courts."

In Diener v. Star-Chronicle Publishing Co., 232 Mo. 416, 135 S.W. 6, 11 (the second Diener case), responding to the argument that the publication involved had the tendency to expose plaintiff to public hatred, contempt or ridicule as set out in the statute defining libel, the court said: "But he who thinks that an article merely having that tendency is either a civil or a criminal libel has studied the law of libel to little purpose. The controlling words in that section are 'malicious defamation' by means of printing and writing, etc., tending to provoke him to wrath or expose him, etc. There must be defamation in a libelous sense before there can be a libel." Again, in Hylsky v. Globe Democrat Publishing Co., supra [348 Mo. 83, 152 S.W.2d 122], the court reiterated the doctrine that, "A publication in order to be libelous must be defamatory."

In determining whether or not particular language is defamatory no positive rule can be laid down as applicable in all cases and under all circumstances but generally speaking the allegedly defamatory words are to be considered in their plain and natural meaning and to be understood by courts as people generally would understand them and according to the sense in which they appear to have been used. A construction differing from that which the words bear in their common acceptation and meaning should not be placed upon them.

Referring now to the specific language charged to be libelous, it can scarcely be said that, standing alone at least, it can be defamatory. It does not charge, discuss, nor intimate anything relative to plaintiff's personal character, habits or business integrity. It should first be observed that the article as published was not written of nor concerning plaintiff at all. The mention of his name was merely incidental and it was simply recited that Binaggio went to Santa Fe with Al Marshall, not to rob a bank nor commit a murder, but "to look over some legitimate propositions." There was certainly nothing derogatory of plaintiff in this recitation. For once in his life Binaggio was engaged in a legitimate transaction so designated by the publication. There was nothing in these words indicating that plaintiff was a "friend, companion and confidant of Binaggio and that plaintiff was interested in forming some kind of business association with Binaggio in New Mexico." We agree with the trial court that, "The inference or innuendo to be drawn therefrom is that plaintiff, a legitimate business man, merely knew Binaggio; that they took a legitimate business trip together and after returning from the trip Binaggio told his wife he had bought a limestone mine and was getting out of 'racketeering'." The article describes one transaction only between plaintiff and Binaggio and there is no basis for inferring that plaintiff and Binaggio contemplated becoming partners. It was Binaggio who had bought the limestone mine, not plaintiff and Binaggio, and the article does not

by any fair construction show that plaintiff participated in the purchase of this limestone mine.

In Walsh v. Pulitzer Publishing Co., supra [250 Mo. 142, 157 S.W. 328], plaintiff, a lawyer, was charged by the allegedly libelous article with having as his supporters and clients, "survivors of the most degraded regimé that St. Louis ever knew." The article said of plaintiff, who was a candidate for prosecuting attorney, "The mere candidacy of such a person as Walsh for such an office should fill the city with alarm. He has no qualifications for the place. His sponsors and his associates are survivors of the most degraded regimé that St. Louis ever knew. He can have no proper motive in aspiring to the place." Holding that the plaintiff was not defamed, the court said that for a lawyer to have a questionable class of clients would not affect his reputation in the community.

In the instant case the only "association" that can be gathered from this article was in a strictly legitimate business. There being no ambiguity in the language charged to be libelous, innuendo may not be resorted to for the purpose of enlarging the natural and ordinary meaning of the words. The publication containing nothing which defamed plaintiff, the language of the article may not be aided by innuendoes which are not reasonable. The order appealed from is therefore sustained.