Wayne S. **MARTENEY**, Appellant,

v.

**UNITED PRESS ASSOCIATION,**
Appellee.

No. 5084.

United States Court of Appeals
Tenth Circuit.

July 21, 1955.

Emmet A. Blaes, Wichita, Kan. (Roetzel Jochems, Wichita, Kan., on the brief), for appellant.

Wayne Coulson, Wichita, Kan. (Howard T. Fleeson, Homer V. Gooing, Paul R. Kitch, Dale M. Stucky, Donald R. Newkirk, and Robert J. Hill, Wichita, Kan., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PHILLIPS, Chief Judge.

Marteney brought this action against the United Press Association to recover damages for alleged libel.

On February 25, 1952, the United Press sent out the following news dispatch to Kansas and Colorado papers and the St. Louis-Houston newspaper circuit:

"Topeka, Kan., Feb. 25.—(UP)— Attorney General Harold Fatzer said today Wayne Marteney, President of a Garden City, Kan., grain company now in bankruptcy, has crossed the border into Mexico.

"Marteney, whose million-dollar grain empire fell apart, is charged with seven violations of the Kansas Warehouse Law and is free under $5,000 bond.

"Fatzer said efforts are being made to return Marteney, and the case will be taken to the State Department if necessary.

"News of Marteney's departure for Mexico came as efforts were being made to locate Mayor C. M. Henderson of Farwell, Tex., also a reported visitor below the border.

"Henderson and Marteney teamed to form the Garden Grain and Seed Company at Garden City, a venture that in less than four years was worth $1,000,000.

"Fatzer said Marteney went into Mexico at El Paso, Tex., but gave no additional details."

The first, third and sixth paragraphs of the dispatch were false. The fourth paragraph was false, in so far as it related to Marteney.

Marteney did not allege special damages. The trial court directed a verdict in favor of United Press on the ground that the publication was not libelous per se and entered judgment for United Press.

■ Whether a publication is libelous per se is a question of law to be determined by the court.[1]

■ In determining whether the alleged defamatory matter is libelous per se the court should give to the words used their plain and natural meaning.[2] It should determine what would be the natural and probable effect upon the mind of the average lay reader.[3]

In some jurisdictions a publication to be libelous per se must be fairly susceptible of but one meaning and that an opprobrious one.[4] In its opinion in Jerald v. Houston, 124 Kan. 657, 261 P. 851, 855, the Supreme Court of Kansas indicates that it follows that doctrine.[5]

■ In determining whether the publication is libelous per se it must be read and considered as a whole.[6]

The news dispatch stated that Marteney was charged with seven violations of the Kansas Warehouse Law and was free under a $5,000 bond; that he had crossed the border into Mexico at El Paso, Texas; and the Attorney General

1. Jerald v. Houston, 124 Kan. 657, 261 P. 851; Brinkley v. Fishbein, 134 Kan. 833, 8 P.2d 318.

2. Lorentz v. RKO Radio Pictures, 9 Cir., 155 F.2d 84, 87; Wimmer v. Oklahoma Pub. Co., 151 Okl. 123, 1 P.2d 671; Marshall v. National Police Gazette Corp., 8 Cir., 195 F.2d 993, 996.
See, also, Hanson v. Bristow, 87 Kan. 72, 123 P. 725, 727.

3. Dusabek v. Martz, 121 Okl. 241, 249 P. 145, 146, 49 A.L.R. 253; Wimmer v.

Oklahoma Pub. Co., 151 Okl. 123, 1 P. 2d 671; Stevens v. Snow, 191 Cal. 58, 214 P. 968, 970; Knapp v. Post Printing & Publishing Co., 111 Colo. 492, 144 P. 2d 981, 984.

4. 53 C.J.S., Libel and Slander, § 8, p. 43.

5. See, also, Brinkley v. Fishbein, 134 Kan. 833, 8 P.2d 318, 319.

6. Jerald v. Houston, 124 Kan. 657, 261 P. 851, 855; Brinkley v. Fishbein, 134 Kan. 833, 8 P.2d 318, 319.

had said, "Efforts are being made to return Marteney, and the case will be taken to the State Department if necessary."

 Considering the publication as a whole, we think the plain and natural meaning it would convey to the average lay reader is that Marteney, having been charged with seven violations of the penal laws of Kansas and being free under bond, had fled to Mexico to avoid prosecution, and that it was not fairly susceptible of any other meaning.

We conclude, therefore, that the publication as a natural and immediate consequence would cause injury to Marteney and is, therefore, libelous per se.

 At the trial Marteney tendered in evidence the headlines written by newspapers to the articles which they published based on such press dispatch. The Lamar Daily News (a Colorado newspaper) headlined its article, "Marteney Jumps Bond, Goes Into Mexico." The Great Bend Daily Tribune (a Kansas newspaper) headlined its article, "Head of G. C. Grain Company Skips to Mexico." The Wichita Eagle (a Kansas Newspaper) headlined its article, "Marteney Now in Mexico, Fatzer Says." The court sustained an objection to the proffered evidence of the headlines. We think the trial court ruled correctly.

 It is a well known fact that many newspapers indulge in extravagant and sensational headlines to news dispatches which they publish. In Jerald v. Houston, 124 Kan. 657, 261 P. 851, at page 855, the court said: "It is the practice of some newspapers deliberately to put poison in a headline and follow it with a weak antidote in the body of the article." A press association has no control over the headlines which a newspaper uses in connection with its press dispatches. The headline is the independent act of the newspaper publisher. We think it would be manifestly unfair to a press association to hold it accountable for the headlines which a newspaper uses in connection with a press dispatch sent out by the press association. Full dissemination of important news should not be subjected to that hazard. The press association should be held responsible only for its own acts and the defamation which it disseminates.

The judgement is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.