No. 27,986.

W. E. STONE, *Appellant,* v. THE HUTCHINSON DAILY NEWS, *Appellee.*

No. 27,987.

HARRY CHISLER, *Appellant,* v. THE HUTCHINSON DAILY NEWS, *Appellee.*

(266 Pac. 78.)

SYLLABUS BY THE COURT.

1. LIBEL AND SLANDER—*Privileged Publication—Judicial Proceedings—Search and Seizure Action.* A search and seizure action before a justice of the peace, in which a warrant has been issued by the justice and a return has been made thereon, is a judicial proceeding in the sense of considering testimony given and papers filed therein as privileged.

2. SAME—*Privileged Publication—Affidavit in Search and Seizure Action.* An affidavit showing who took the property sought in a search and seizure action, and showing the connection and arrangement between the owners of the property and those taking it, is proper to be filed in such cause before or after the return of the sheriff on the warrant, and is in the nature of the "proof" referred to in the statute and therefore privileged, except as to Randall, the maker.

3. SAME—*Privileged Publication—Fair and Reasonably Accurate Report of False Affidavit in Judicial Proceeding.* The publication in a newspaper of an article based upon an affidavit filed in a search and seizure action, showing, among other things, who took the property and the arrangement with the owners for the taking of it, is qualifiedly privileged, even if the affidavit be false, provided the article be fair, honest and reasonably accurate and not disproportionate, exaggerated or sensational.

---

Libel and Slander, 36 C. J. pp. 1222 n. 3, 1250 n. 8, 1255 n. 81, 1274 n. 89, 1277 n. 29; 37 C. J. p. 108 n. 10; 17 R. C. L. 329, 344-347.

4. SAME—*Privileged Publication—Question of Law.* The question of whether a newspaper article is qualifiedly privileged is one of law to be determined by the court and not by the jury.

5. SAME—*Privileged Publication—Articles Qualifiedly Privileged.* The published article in this case considered and compared with the affidavit and held to be fully within the rules as qualifiedly privileged.

6. SAME—*Privileged Publication—Malice Cannot Be Inferred.* Malice cannot be inferred and must not be presumed from a publication that is held by the court to be qualifiedly privileged.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed April 7, 1928. Affirmed.

*Carr W. Taylor,* of Hutchinson, and *F. J. Oyler,* of Iola, for the appellants.

*F. Dumont Smith, Eustace Smith* and *Arthur T. Symns,* all of Hutchinson, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is a consolidation of two actions brought by the two plaintiffs separately against the same defendant, a newspaper publishing company, to recover damages for the publication of an article which the plaintiffs claim was false and libelous, and published by the defendant company maliciously and without probable cause. Issues were joined, trial had to a jury, and verdict and judgment rendered in favor of defendant, from which judgment the plaintiffs appeal.

Three grounds of error are especially urged by the appellants: First, the giving and refusing of instructions; second, the interruption of counsel by the court in the argument and preventing their arguing certain features of the case; and, third, the admission and rejection of evidence.

Counsel for appellants very properly designate the vital issue in the case as being whether the affidavit of H. E. Randall was privileged and the publication of it qualifiedly privileged. The determination of this question will practically settle the questions of error complained of under the three distinct headings above stated.

The preliminary question raised by appellee as to the sufficiency of the abstract and the right to supplement it at a late date has been informally disposed of in the interest of a full, complete and fair presentation of the whole record and all the questions involved, rather than the exclusion of anything deemed important by the enforcement of a severe rule.

The affidavit of Randall, which was the basis of the published article in the newspaper, was made before a justice of the peace in Reno county and filed with such officer in connection with a search and seizure proceeding in his court. The necessary preliminary steps had been taken to procure a warrant to search certain places and seize certain personal property said to have been stolen and to bring the property before the justice of the peace. The sheriff had executed the warrant and had made his return, showing he had found the property, stating where it was found. Randall's name was mentioned in the return, which led to his being interviewed concerning the possession of the property. After such interview he made an affidavit, went with the attorney who assisted him in preparing it to the office of the justice, swore to it there, and left it with the justice, who filed it and placed it among the papers in the search and seizure case. The affidavit contains the names of both plaintiffs, describes the missing property, states an arrangement between himself (Randall) and the plaintiffs, made with a party named as their agent, admits the possession of the property in question, and states it was removed by him under an agreement with the plaintiffs herein.

The reporter on the newspaper found the affidavit with the justice, made notes from it, and investigated the subject to which it related by interviews with the sheriff making the return, and the attorney, who, with permission of the county attorney, had instituted the search and seizure case. Through these interviews the reporter learned of a conversion case being prosecuted by these plaintiffs in the district court of Reno county involving this same property, and from this affidavit and the additional information obtained from the sheriff and attorney the reporter says he wrote the newspaper article that was published, except that he did not write the headlines thereof.

The newspaper article does not follow the language of the affidavit nor pretend to give the details of it. It entirely omits any reference to the first long paragraph of the affidavit, which concerns the relation between Randall and one Haynes, who is in no way connected with either of the cases mentioned and referred to in the newspaper article. The article commences with a brief history of the events leading up to the bringing of the conversion case by the plaintiffs, the sudden disappearance of the property involved therein, the procuring of the search and seizure warrant and the

finding of the property, and then mentions things contained in the affidavit about the taking of the property and the arrangement with the plaintiffs that it should be taken. The article concludes with a statement accredited to the attorney to the effect that Randall agreed that the conversion action would be withdrawn "in order to prevent criminal action being brought against them" (undoubtedly referring to the plaintiffs herein). The complication is referred to once in the heading and twice in the body of the article as a conspiracy. The article speaks of the taking of the property with the knowledge of the plaintiffs, whereas the affidavit says it was done through an arrangement with them. There is a subhead in the article, "Knew of removal." The affidavit at one place introduces some of the statements with the remark, "as I am informed and believe."

Was such an affidavit privileged and such an article in a newspaper qualifiedly privileged? It is contended, in the first place, that the Randall affidavit was no part of a judicial proceeding and therefore not entitled to be privileged in any way. It told who took the property, where it was, and by what right or authority it was taken. The finding of the property by the sheriff on a search and seizure warrant is not the end of the case. The justice of the peace shall order the property delivered to the owner after receiving satisfactory proof of the ownership, and he shall take the examination of the persons accused and dispose of the property accordingly. (R. S. 62-1807 to 62-1811.) Whether the justice used and acted upon this proof is not shown, but it was certainly of the kind needed to enable him to dispose of the property and close the case, and he is presumed to have done his duty. Again, this affidavit was evidence in the case given before and accepted by the justice and must be treated like so much testimony given in the case. The neglect of the court to make a formal order, if there was such neglect, would not change the character of the evidence as privileged in a regular judicial proceeding. The section referred to on this subject in 17 R. C. L. 347 shows there is a conflict in the decisions on *ex parte* proceedings and cases just started. This proceeding, however, was carried clear through to the end. The case of *Nixon v. Dispatch Printing Co.*, 101 Minn. 309, was an *ex parte* case—a petition for divorce left or filed with the clerk never in any manner came before the court or judge. The case of *Byers v. Meridian Ptg. Co.*, 84 Ohio St. 408, was where a complaint had been filed against a person for perjury, but

no action had been taken by the justice of the peace and no warrant issued. The case of *Sweet v. Post Publishing Co.*, 215 Mass. 450, was where there was a mistaken identity of person, and the comment applied to the wrong person. The case of *Wills v. Jones*, 13 App. D. C. 482, is the worst kind of an *ex parte* case. There the publisher filed a bill in equity himself and then immediately published the contents thereof and comments thereon.

We have no hesitancy in calling the search and seizure case before the justice a judicial proceeding and the affidavit of Randall a proper paper to be filed therein, and such as is expected and. required by statute to be filed in order to furnish the justice with the "satisfactory proof" referred to in the statute, and therefore a privileged document, except as to Randall, the maker thereof.

Next, Was the published article, even though based in part on a privileged paper used in a judicial proceeding, qualifiedly privileged? The following quotations announce the recognized rules for the determination of this question:

"Judicial proceedings do not protect statements made therein, except such statements as may fairly or reasonably be made in such proceedings. But still we think that the interests of justice require that courts should construe all things said in judicial proceedings liberally, so as to protect the persons making the statements from unreasonable prosecutions for slander or libel." (*Bailey v. Dodge*, 28 Kan. 72, 82.)

"The report must present fully and fairly an impartial account of the proceedings. It must also be accurate, at least in regard to all material matters. The publication may consist of an abridged or condensed statement. It is not necessary that the report be verbatim. A substantially accurate report may be privileged although of only a part of the proceedings. But it must contain the substance of the thing it undertakes to present, or the whole purport of any special, separable part. It must not give undue prominence to inculpatory facts, and depress or minify such facts as will explain or qualify the former, and must not omit material points in favor of the complaining party, or introduce extraneous matter of a nature injurious to him. In short, the report must be characterized by fair-mindedness, honesty, and accuracy." (36 C. J. 1274.)

Was the article characterized by fair-mindedness, honesty and accuracy? Was it within the limits of the rules above stated, which are necessary to make it qualifiedly privileged? We have with some care endeavored to set out the principal features pointed out by appellants as deviations from the affidavit or violations of the rule of fairness, honesty and accuracy. Certainly the omission from the published article of entirely extraneous matter contained

in the affidavit is not in any way unfair to the plaintiffs. No particular complaint is made by appellants except as to its being a deviation from the affidavit of the brief history of the conversion and search and seizure cases, none of which is found in the affidavit, and no good reason has been assigned why such history was harmful or injurious. The concluding sentence of the article is accredited to the attorney as being stated by Randall in connection with the affidavit. It states that the conversion action will be dismissed to prevent criminal action against them. We must not overlook the fact that one of the actions mentioned in the affidavit and the one in which it was filed was a criminal action. The whole proceeding is based upon the belief that the property in question had been stolen, and the affidavit shows who took the property and that it was by arrangement with plaintiffs. If the statements in the affidavit were true, then the proximity is too close to permit of differentiation. Again, the word conspiracy is used in the article and not in the affidavit; and the statement that plaintiffs had knowledge of the removal—and the subhead to the same effect—was used, while the affidavit refers to the making of an arrangement, and once denominates it as an agreement. These words and statements, while not literally accurate or exact quotations, are reasonable inferences, and are not in any way exaggerations or overstatements, but different language only, with substantially the same import and plainly within the reasonable meaning of the language of the affidavit.

"In determining whether a newspaper article is libelous *per se*, headlines and the body of the article must both be regarded. Each statement must be considered in connection with the others, and the whole must be fairly and reasonably construed." (*Jerald v. Houston,* 124 Kan. 657, syl. ¶ 4, 261 Pac. 851.)

We think the published article was fully within the limits prescribed for the publishing of the privileged affidavit and therefore was qualifiedly privileged.

"Pertinent and material allegations in an answer to a petition filed in an action pending in a district court are absolutely privileged; and a demurrer to a petition in an action for libel based on such allegations is properly sustained, although it is alleged in the petition that the allegations of the answer were willfully and maliciously false." (*Bugg v. Insurance Co.,* 114 Kan. 549, syl., 220 Pac. 258. See, also, *Coleman v. MacLennan,* 78 Kan. 711, 98 Pac. 281.)

This conclusion substantially settles the three specific errors assigned, except as to the presumption and inference of malice from the injurious character of the publication, which entered into the contention on each of the three particular assignments of error. The

learned counsel for appellants commendably maintained a thoroughly consistent course throughout the trial and the review in this cause, closely adhering all the time to the theory that the publication was not qualifiedly privileged, and concluded, therefore, that the jury could properly presume and infer malice. But these are questions of law to be decided by the court, and if the published article is qualifiedly privileged, then there can be no implied or inferred malice. This fully accounts for the differences between counsel for appellants and the trial court as to instructions, limitation of argument to the jury, and the introduction of evidence. They were simply following two different theories. We think the trial court was right; that it was not a matter to go to the jury; that the published article was qualifiedly privileged; that malice could not be inferred from it.

"Whether, upon a particular state of facts, a communication is privileged is a question of law to be determined by the court." (*Richardson v. Gunby,* 88 Kan. 47, 51, 127 Pac. 533.)

"Malice is not presumed from the false and injurious character of the publication, although it may be inferred from the language used, if it is of a disproportionate, exaggerated and sensational character. Otherwise it must be made to appear by extrinsic evidence." (*Carver v. Greason,* 104 Kan. 96, syl. ¶ 2, 177 Pac. 439. See, also, *Kirkpatrick v. Eagle Lodge,* 26 Kan. 384.)

The instructions given were upon this theory of the case and those refused were upon a theory entirely at variance with it. The errors complained of as to the admission and rejection of testimony can be accounted for and explained the same way. We find no error in the giving or refusing of instructions and no prejudicial error in the admission or rejection of testimony.

The judgment is affirmed.