MILLER v. MIX.

(Division B.   Nov. 23, 1931.)

[137 So. 742.   No. 29533.]

Engle & Laub, of Natchez, for appellant.

**E. H. Ratcliff** and **L. T. Kennedy**, both of Natchez, and **J. M. Kelley**, of New York City, for appellee.

Argued orally by **S. B. Laub**, for appellant, and by **J. M. Kelley**, and **E. H. Ratcliff**, for appellee.

**Anderson, J.**, delivered the opinion of the court.

Appellant filed the bill in this case in the chancery court of Adams county against appellee, a nonresident of this state, to recover the sum of fifty thousand dollars, damages alleged to have been suffered by appellant on account of a libelous publication having been made of and concerning appellant by appellee. The chancery court acquired jurisdiction upon the ground that the proceeding was a foreign attachment in chancery, in which there were resident garnishees alleged to have been indebted to appellee, or having in their custody effects belonging to appellee. There was a trial on bill, answer, and proofs, resulting in a final decree dismissing appellant's bill. From that decree appellant prosecutes this appeal.

The alleged libel consists in the publication in the Arkansas City Daily Traveler, a newspaper of Arkansas City, Kan., under date of August 31, 1929, of the following interview had by a reporter of that paper with appellee.

"Mix Declares 'Talkies' are Step Backward and Short-Lived Novelties. Talking pictures are a step backward in movie productions and are short-lived novelties

in the opinion of Tom Mix, western movie hero, who is in Arkansas City today as the featured member of the Sells-Floto Circus.

" 'The stage and spoken drama had been in existence for centuries,' Mix pointed out. 'Then came the movies. They filled a need of the people for portrayed action without the tiresomeness of listening to and interpreting spoken lines. Recreation is a necessity and the more restful it is, the better. Silent movies are restful. Talking pictures are not. They've simply been crammed down the public's throat as a stunt and they won't last long because the public won't stand for them.

" 'Silence is the thing most sought today. Already it is declared that great minds converse mentally without the medium of sound. One hundred years from now all conversation will be by mental telepathy. The radio, the telephone and telegraph are inventions that are helping it.

" 'We Americans are leading the world in bringing about the elimination of speech. We speak abruptly and often harshly, but nevertheless to the point.

" 'The whole idea of business is "get to the point." Silent dramas have helped a lot in showing that conversation is unnecessary, but talking pictures are bringing a lot of rigmarole back into play.' Tom Mix received the Traveler representatives in his private pullman car near the station. He was dressed in a picturesque cowboy costume, tight duck pants and white silk shirt, having on it his monogram of a diamond in which T. M. is inscribed. A bright sash was looped in his belt. Incidentally he wore his $35,000 diamond ring.

"He wore red slippers but close at hand were the spurred boots and the white ten-gallon hat.

"He wasn't eager to talk about talking pictures. He has a certain patter on his philosophy of life that he feeds news reporters. 'I don't like publicity,' he said. 'I'm a public servant in a way and like to please the

majority of folks. But when I slip off to some kids' hospital to shake hands with the youngsters, I don't give out any advance notice nor try to get my pictures in the papers and that sort of thing.

" 'If I did people would resent it. I try to please the majority of people. That's why I'm in the circus now. I get an opportunity to please more kids by the personal touch than I would in the movies. I've been in pictures for twenty years. I may go back. It's up to the public.'

" 'And did you believe that you would have opportunity to please more people by joining this circus than the 101 Ranch show?' the reporter ventured.

"Mix apparently would rather have not mentioned the 101 Ranch deal. He dismissed it by saying in the abrupt harsh way that he so advocates, 'That was simply a nightmare of Zack's. I never considered any contract with the 101 Ranch.' "

The particular language of the interview alleged to have been libelous consists of the last two sentences, which are as follows: "That was simply a nightmare of Zack's. I never considered any contract with the 101 Ranch."

The 101 Ranch Wild West Show was, at the time of the alleged libel, a Delaware common-law trust. Appellant was the manager of the show, and owned an undivided one-third interest in it. But its assets were under a lease to the Western Shows Company, a Delaware corporation.

Appellee was a moving picture actor and circus performer, well known in the circus and moving picture world. Some time before the alleged libel, appellant, as general manager of the 101 Ranch Wild West Show, claimed to have employed appellee as a performer in the show, at a salary of $10,000 a week; appellant claimed that appellee breached the contract. The last two sentences in appellee's interview, published in the Arkansas

City Daily Traveler, apparently have reference to that matter.

The evidence showed that the interview was published and circulated in the state of Kansas—there was no evidence to show that it was published or circulated in this state. The governing principles of law, therefore, are those of the state of Kansas, and not of this state. 37 C. J., p. 19, section 320; 17 R. C. L. 371.

Unless the language used in the newspaper interview was defamatory per se, there is no cause of action unless special damages are pleaded and proven; and in determining whether the interview is libelous per se, the headlines, as well as the body of the article, must be taken into consideration. Each statement must be considered in connection with the others, and the whole fairly and reasonably interpreted. Jerald v. Houston, 124 Kan. 657, 261 Pac. 851; Stone v. Hutchinson, 125 Kan. 720, 266 Pac. 78, 58 A. L. R. 718. And innuendo cannot make libelous words which obviously are not libelous. Jerald v. Houston, supra.

Now, applying these principles to the case in hand, we think it manifest that the language, "That was simply a nightmare of Zack's. I never considered any contract with the 101 Ranch," was not libelous per se. It doesn't even appear to be an unfriendly statement. On its face it bears no evidence whatever of malice, and we are unable to see how the language could be made libelous by innuendo, without placing an interpretation upon it which it will not bear. The language could have meant nothing more than that appellant was mistaken in claiming that he had a contract with appellee to perform with the 101 Ranch Show.

And furthermore, as we view the evidence, appellant failed to prove that he suffered any special damages. Any damages suffered by the 101 Ranch Wild West Show, or its lessee, the Western Show Company, would not be damages for which the appellant would be entitled to

recover in his own right, although he might have been financially interested in the welfare and success of both of those companies.

Affirmed.