No. 33,047

NELLIE CLINE STEENSON, *Appellee* and *Cross-appellant,*
v. LESLIE E. WALLACE, *Appellant.*

(62 P. 2d 907)

Opinion filed December 12, 1936.

W. H. Vernon, J. S. Vernon and Vincent G. Fleming, all of Larned, for the appellant.

A. L. Moffat, of Kinsley, for the appellee and cross-appellant.

The opinion of the court was delivered by

BURCH, C. J.: The action was one against the publisher of a newspaper for damages for publication of matter alleged to be defamatory, concerning the county attorney of Pawnee county. The pleadings were a petition and answer, and an amendment to the answer by way of addition. Plaintiff filed a motion to strike paragraphs of the answer and to strike the amendment. Plaintiff also filed a demurrer to the amended answer on the ground it failed to state facts sufficient to constitute a defense. Defendant moved for determination of questions of law arising upon the pleadings, in advance of trial of the facts, as provided by R. S. 60-2902. After a hearing, the court made the determination, which was adverse to defendant and had the effect of sustaining plaintiff's demurrer to material features of the answer. Defendant appeals.

A relief worker in Pawnee county needed transportation in the performance of her duty. An opinion prevailed that she should be reimbursed for necessary traveling expenses. Believing it would be cheaper to buy a car than to pay expense of transportation, the board of county commissioners purchased a Ford automobile for use by the relief worker. The county attorney refused to approve the bill. Interest in the action of the county commissioners and the county attorney became aroused, and became vocal, and the county attorney concluded she would vindicate herself through the medium of the press. .

The county attorney prepared for publication in the Larned Tiller and Toiler, a newspaper published by defendant, a signed article purporting to give her side of the specific controversy, but going somewhat further. Defendant procured a statement from two members of the board of county commissioners in answer to plaintiff's article, and going much further. Defendant published the two articles in the issue of his paper for June 19, 1934. The next day the county attorney replied, with some acrimony, in the columns of the

same newspaper. Approximately six months later, plaintiff sued the publisher of the newspaper for damages for libel.

As indicated, the newspaper airing of views originated over a matter of transportation, a feature of which took the form: Should a relief worker have mileage? The article of the county commissioners referred to payment of mileage in connection with conduct of the county attorney. On that subject the article said:

"The county attorney says the general laws do not provide any authority to purchase this car. Neither does the general law provide for the payment of mileage to the county attorney. In fact, it expressly states that no county officer is entitled to mileage unless it is specifically authorized in the statute providing for their salaries. Notwithstanding this, Mrs. Steenson has OK'd her own vouchers on several occasions for mileage which is positively illegal. The board allowed these fees because they were OK'd by the county attorney and we presumed they were legal until we learned through other authority that they were not legal."

The county attorney's rejoinder was, she was entitled to five cents per mile and expenses while attending to official duties outside her office but within the county, and was entitled to mileage, expenses, and reasonable compensation in addition to salary, while attending to official duties outside the county. Defendant's answer contained copies of the mileage claims, duly verified, which plaintiff presented, and which were paid. They disclosed mileage inside and outside the county. In several instances expenses were added.

The publisher prefixed to the published statement of the county commissioners a headline, a subheading, and a short introduction stating what the county commissioners had to say about the county attorney collecting mileage. The adjudication of the district court follows:

"1. That the charges for mileage as shown by the exhibits attached to the answer were legitimate charges for expenses of the county attorney, both within and outside Pawnee county. This is especially true since the same were ratified and paid by the county commissioners.

"2. The heading of the article as published 'Illegal fees charged' with the following heading, charges the county attorney (now plaintiff herein) with the commission of a crime.

"3. The article contains this heading, 'Illegal fees charged' 'County board says county attorney collected unauthorized mileage.' This heading destroys the privilege of the publication for two reasons: (1) It charges the county attorney with a crime. (2) The heading was not fair and reasonable considering the article, but was in fact disproportionate and exaggerated and the most damaging heading that could have been chosen.

"4. The defendant may plead his belief as to the truth of the article for the purpose of mitigating exemplary damages.

"5. The defendant may plead in mitigation of exemplary damages the fact that he published in his newspaper for plaintiff her statement concerning the controversy and her answer to the charge of the commissioners in the article above mentioned."

The first declaration is incorrect.

The county attorney had no official duties to perform outside the county. In some instances she could be employed by the board of county commissioners to render professional services outside the county (*Heinz v. Shawnee County Comm'rs*, 136 Kan. 104, 12 P. 2d 816), but such service is not official, and mileage is not an incident to the employment. Neither is mileage an incident to performance of official duty within the county.

Generally, mileage is a travel allowance at a fixed rate per mile. As applied to this case, mileage is a rate per mile traveled, fixed and allowed by the legislature to specified public officers for traveling expenses in specified instances. Mileage may or may not equal or exceed actual expenses incurred, but without a statutory grant, there is no mileage. In this instance, all the charges for mileage were made and were paid while the emergency fees and salaries act of 1933 was in force. The title and sections 1 and 2 read:

"An act relating to fees and salaries of certain county officers, employees and other persons therein named, for the time, term and emergency herein provided.

*"Be it enacted by the Legislature of the State of Kansas:*

"Section 1. In lieu of the fees and/or salaries heretofore paid certain county officers and employees during the period commencing April first, 1933, and ending March thirty-first, 1935, there shall be paid to or collected by said officers and employees, the fees and/or salaries set forth and provided for in this act.

"Sec. 2. That all officers herein mentioned in all counties of this state shall receive for their services the compensation herein allowed, and no other fees, mileage, salaries, commissions, perquisites, costs or other things of value of any kind or nature whatsoever unless specifically allowed them by the terms of this act." (Laws 1933, ch. 186.)

While mileage was specifically allowed to many officers, the county attorney was not one of them. It is not necessary to discuss the statute, the meaning and effect of which cannot be misunderstood or gainsaid.

Mileage not being allowable at all for the county attorney for any kind of official service, the commissioners could not, in effect, amend the statute by ratification.

The second declaration was not a proper declaration of law arising on the pleadings.

The headings and introductory portion of the county commissioners' article must be construed together and with what the article itself said. The subheading was "County attorney collected unauthorized mileage." The body of the commissioners' article told exactly what occurred with respect to charges for mileage, using the words "positively illegal," and "not legal."

The word "illegal" does not necessarily imply moral turpitude or liability to criminal prosecution. It may imply simply "not according to law," or as the subheading said, "unauthorized." In this instance, plaintiff could not be punished criminally for charging mileage unless the conduct was exhibited willfully, that is, purposely and intentionally, in the sense of with unlawful intent, or in bad faith. Nothing of the kind is apparent on the face of the record, and the most the district court could say was, that the words were capable of a meaning which imported commission of a crime (*Doherty v. Kansas City Star*, 144 Kan. 206, 59 P. 2d 30) and leave it to the jury to say how the words were in fact understood. (See *Brinkley v. Fishbein*, 134 Kan. 833, 836, 8 P. 2d 318.)

The third declaration was incorrect.

In this state the liberal rule relating to conditional privilege, existing before the decision in the case of *Coleman v. MacLennan*, 78 Kan. 711, 98 Pac. 281 (1908), and fully discussed and applied in that case, is approved and adhered to. The article of which plaintiff complains does not show malice on the part of the publisher toward plaintiff. She was obliged to allege and must prove express malice. The publisher had precisely the same conditional privilege to inform the public of conduct of the county attorney as a public officer that he would have had if plaintiff had been merely a candidate for office, and it would be a strange rule which would limit a newspaper to exposing conduct merely deserving of censure, but not criminal.

The district court was not authorized to focus special attention on the headlines of the article (*Jerald v. Houston*, 124 Kan. 657, 261 Pac. 851; *Brinkley v. Fishbein*, 134 Kan. 833, 8 P. 2d 318), and the court is obliged to say the headlines did not exaggerate the character of conduct described in the article. If they did, mere exaggeration would not show express malice and prevent defendant from interposing the defense of conditional privilege. (*Carver v. Greason*, 104 Kan. 96, 177 Pac. 539.)

Declarations four and five were correct as far as they went, but they unduly restricted defendant's privilege to plead.

A cross-appeal relating to declaration five is without merit.

The judgment of the district court is reversed, and the cause is remanded with direction to proceed according to views which have been expressed.