CLIFTON STANLEY SHORT, JR. v. THE NEWS–JOURNAL COMPANY, a Corporation of the State of Delaware.

*(January* 19, 1965)

CHRISTIE, J., sitting.

*James H. Hughes, III,* for plaintiff.

*Louis J. Finger,* for defendant.

Superior Court of Delaware, Kent. No. 15 Civil Action 1963.

CHRISTIE, Judge.

This case involves alleged libel. It is before the Court on defendant's motion for summary judgment. The Court must determine

if the undisputed facts of the case justify the application of the defense of privilege so as to entitle defendant to judgment.

The action is based on newspaper articles published on January 12, 1963, in the Wilmington Morning News and the Evening Journal. The articles accurately reproduced a press release made by the office of H. Leland Brown, Director of Internal Revenue for the District of Delaware, and stated that the Internal Revenue Service had seized assets of Clifton Stanley Short, Jr., to satisfy delinquent income taxes in the amount of $52,000.

The articles were erroneous in that they identified Clifton Stanley Short, Jr., as the delinquent taxpayer; whereas it was his father, Clifton Stanley Short, Sr., who was delinquent. Retractions were published by the Wilmington Morning News on January 15, 1963, and by the Evening Journal on January 29, 1963.

Both parties agree that the mistake in identification was made by the Internal Revenue Service in the preparation of the press release and that the publication of this item by the press was without malice and without knowledge that it contained an error.

Plaintiff contends, however, that defendant is strictly liable for damage caused by publication of defamatory material, because the press release was not a privileged executive communication and defendant had no qualified privilege.

As a general rule, one is strictly liable for any defamatory matter he publishes, whether it is published in good faith or as a result of honest mistake, and such factors as good faith, extreme care, or honest mistake, serve only to mitigate damages. *Peck v. Tribune Co.,* 214 U.S. 185, 29 S.Ct. 554, 53 L.Ed. 960 (1909); *Corrigan v. Bobbs-Merrill Co.,* 228 N.Y. 58, 126 N.E. 260, 10 A.L.R. 662 (1920). Prosser on Torts, Sec. 108 (3rd Ed. 1964).

However, a number of exceptions to this rule have been recognized. An absolute privilege to publish defamatory statements has

been recognized under circumstances where complete freedom of expression and freedom from any inhibiting fear of personal consequences is deemed necessary in the public interest. An absolute privilege usually applies to legislative and judicial proceedings, and to statements made within the scope of the official duties of a policy-making member of the executive branch of government. Prosser on Torts, Sec. 109, *Spalding v. Vilas,* 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896); *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959).

There is also a broader category where a qualified or conditional privilege to publish is said to exist. This category of privilege is described in the Restatement as follows:

"The publication of a report of judicial proceedings, or proceedings of a legislative or administrative body or an executive officer of the United States, a State or Territory thereof, or a municipal corporation or of a body empowered by law to perform a public duty is privileged, although it contains matter which is false and defamatory, if it is

"(a)   accurate and complete or a fair abridgment of such proceedings, and

"(b)   not made solely for the purpose of causing harm to the person defamed." (Restatement, Torts Sec. 611)

The existence of a qualified privilege is conditioned on the absence of express malice, of any knowledge of falsity, or of any desire to cause harm. *Newark Trust Co. v. Bruwer,* 1 Storey 188, 141 A.2d 615, (1958); *Stice v. Beacon Newspaper Corp., Inc.,* 185 Kan. 61, 340 P.2d 396, 76 A.L.R. 2d 687 (1959); and *Coleman v. Newark Morning Ledger Co.,* 29 N.J. 357, 149 A.2d 193 (1959).

A qualified privilege has been held to exist as to publications such as the following:

1. Stories offering "fair comment" on the character and performance of public officials or candidates. Prosser on Torts Sec. 110, P. 812.

2. Accurate summaries of official reports issued by a member of the executive branch of government. *Sciandra v. Lynett* 409 Pa. 595, 187 A.2d 586 (1963).

3. Accurate accounts of legislative or judicial proceedings open to the public. Prosser on Torts, Sec. 110, P. 816.

4. Reproductions of releases prepared by a news-gathering agency. *Layne v. Tribune Co.,* 108 Fla. 177, 146 So. 234, 86 A.L.R. 466 (1933) and *MacGregor v. Miami Herald Publishing Co.,* Fla. App., 119 So.2d 85 (1960). This appears to be a minority view. See 86 A.L.R. 475 (1933).

5. Press releases issued by members of the legislature acting within the scope of their official duties, *Coleman v. Newark Morning Ledger Co.* supra.

From the cases it may be inferred that the basis for this privilege is public interest in the subject matter of the news story, and that a newspaper's conditional privilege is based in part on the privilege of the person publishing the original defamation. Thus, a qualified privilege is often one which is related to the republication of material originally made by a person on a privileged occasion. For a more detailed discussion of this, see Note, "Privilege to Republish Defamation" 64 Col.L.Rev. 1102 (1964).

■ The subject matter of the press release was clearly within the scope of H. Leland Brown's official duties as a responsible official within the executive branch of the government and he was authorized to release such information. *Denman v. White,* 316 F.2d 524 (1st Cir., 1963). He, therefore, had either an absolute or a qualified privilege as to the press release. The accurate publication of such press release is subject to a qualified privilege. To hold otherwise under the facts of

this case would be to render almost meaningless the privilege afforded a public official to inform the public of his activities in matters of public interest.

Since it is clear that defendant in this case acted in good faith without malice or intent to harm and without knowledge that the release contained an error, the qualified privilege finds application. This Court is not required to determine whether the source of the release had an absolute privilege, or merely a qualified privilege in respect thereto.

Plaintiff's contention that the statements as published by defendants were not privileged is based on his contentions that:

(1) The press release was not within the scope of Brown's duties and

(2) Brown was not an official of sufficiently high rank for privilege to apply.

As was mentioned above, the record shows that Brown had authority to release such information and Brown's release is held to be subject to at least a qualified privilege. In any case it is not the act of the official but the news items based on his press release that are the subjects of this suit. The public interest in knowing what the various branches of government are doing and what the officials thereof say they are doing is of sufficient importance to cloak an accurate report of such a release with a qualified privilege.

Defendant's motion for summary judgment is granted.

It is so ordered.