# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

LEE FELDMAN, MATS LEDERHAUSEN, and DOV SEIDMAN,

        Plaintiff(s),

v.

HOWARD MARKS,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. N21C-09-206 DJB

Date Submitted: June 18, 2024
Date Decided: September 23, 2024

**Memorandum Opinion on Defendant's Motion to Dismiss
and the Cross Motions for Summary Judgment**

*On Defendant's Motion to Dismiss - DENIED*
*On Defendant's Motion for Summary Judgment – DENIED*
*On Plaintiff's Motion for Summary Judgment – GRANTED*

*Brian E. Farnan, Esquire, Michael Farnan, Esquire*, and *Rosemary J. Piergiovanni, Esquire*, Farnan LLP, Wilmington, Delaware, and *Stephen Shackelford, Esquire,* Susman Godfrey L.L.P., New York, New York, admitted *pro hac vice*, Counsel for Plaintiffs

*Joe P. Yeager, Esquire*, Margolis Edelstein, Wilmington, Delaware, Counsel for Defendant

**BRENNAN, J.**

## I.    INTRODUCTION

This defamation case is rooted in the jurisdiction of both the Court of Chancery and Superior Court of Delaware.  In this Court, Plaintiffs sue Defendant Howard Marks ("Marks") for sending a verified court filing to *The Financial Times* that allegedly contained false and defamatory statements relating to Marks's decision to sell his shares of LRN Corporation ("LRN").  In their suit, Plaintiffs Lee Feldman ("Feldman"), Mats Lederhausen ("Lederhausen"), and Dov Seidman ("Seidman") allege one count of defamation *per se*.[1]

Initially, Marks moved to dismiss this action.  Following a brief stay, cross-motions for summary judgment were filed.  Because Marks's published statement to *The Financial Times* about Plaintiffs was false and can only be interpreted to malign Plaintiff's business or profession, Plaintiffs' Motion for Partial Summary Judgment is **GRANTED**.  Marks's Motion to Dismiss is **DENIED**, as jurisdiction is proper.  Marks's Motion for Summary Judgment is **DENIED**.

## II.   FACTS

Seidman founded LRN in 1994 and served as LRN's CEO until 2019.[2]  LRN provides ethics compliance education and other related services.[3]   Currently,

---

[1] *See Feldman, et. al. v. Marks*, N21C-09-206 DJB, Complaint ("Compl.") D.I. 1.
[2] Compl. ¶ 15.
[3] *Id.* at ¶ 1.

1

Seidman serves as the chairman of LRN's board and resides in Florida.[4] LRN, a Delaware corporation, asserts it "has helped hundreds of companies and their employees translate ethical corporate behavior into superior performance and sustainable economic value."[5] Feldman, a New York resident, served as director of LRN from 2004 through 2018.[6] Lederhausen, resides in Illinois, and has been a director of LRN since 2012.[7] Marks, a 20-year investor in LRN, sold the entirety of his LRN shares in October 2017.[8] Currently, Marks is the "CEO and Co-founder of StartEngine, the self-proclaimed largest equity crowdfunding platform, valued at hundreds of millions of dollars."[9]

**Tender Offer**

In October 2017, LRN issued an Offer to Purchase ("OTP") up to 7,407,407 shares of its stock from existing shareholders. This "Tender Officer" was open and available to shareholders through November 17, 2017.[10] Despite initially informing Plaintiffs he only intended to tender one million of his shares, Marks, his wife, and his various trusts tendered all 3,029,174 of their collective shares on October 29,

---

[4] *Id.* at ¶ 11.
[5] *Id.* at ¶ 15.
[6] *Id.* at ¶ 12.
[7] *Id.* at ¶ 13.
[8] *Id.* at ¶¶ 14, 23.
[9] *Id.* at ¶ 14.
[10] *Id.* at ¶¶ 20, 24.

2017.[11] Due to the detrimental effect to LRN of Marks's tender of the entirety of his shares, Seidman, on behalf of the Board, repeatedly asked Marks to reduce the number of shares he intended to tender.[12] Even after the time frame passed for the Tender Offer, Seidman again approached Marks and asked him to reduce the number of shares he was tendering.[13] Marks declined. The Board increased the cap on its Tender Offer, and repurchased 9,092,248 shares in the Tender Offer, to avoid disappointing "numerous smaller longtime investors who had expressed their strong desire for a complete exit."[14] Approximately one year after the Tender Offer, on November 27, 2018, LRN was sold to Leeds Equity Partners.[15] As Marks sold all his shares in LRN, and no longer had an interest in the company, he was not informed of, nor did he profit from, the sale.[16]

On February 25, 2019, a former LRN shareholder, Robert Davidow, filed shareholder litigation in the Court of Chancery.[17] The Chancery litigation was filed, "on behalf of a punitive class of LRN shareholders who tendered their shares in the Tender Offer."[18] On May 14, 2020, Marks moved to intervene in the Court of

---

[11] *Id.* at ¶¶ 21, 23.
[12] *Id.* at ¶ 22, 24.
[13] *Id.*
[14] *Id.* at ¶ 22.
[15] *Id.* at ¶ 26.
[16] *Id.*
[17] *Davidow v. Seidman*. C.A. No. 2019-0150-MTZ, D.I. 372-374.
[18] *Id.* at ¶ 27.

Chancery shareholder action.[19] Marks's motion included allegations, "specific to Marks, which accused Seidman and his fellow directors of 'cheating' a longtime friend and investor through trickery, to prevent him from discovering Plaintiffs' 'scheme.'"[20] Specifically, Marks's supplemental filing included the following statement (the "Statement"):

> Marks' tender included the 8,581 shares held in the Marks Irrevocable Living Trust on November 29, 2017. Marks did not realize that his tender of these shares missed the November 17, 2017 deadline to tender. The Individual Defendants[21] knew that if they did not accept these 8,581 shares, Marks would continue to be a LRN stockholder and would subsequently learn of a sale of the entire Company at a premium price. As one of the largest individual tenderer of shares, the Individual Defendants did not want Marks to learn that he had been cheated by the Individual Defendants on almost all of his LRN stock and all of his wife's stock. As a result, the Individual Defendants accepted these 8,581 shares even though the Tender Offer had already closed, so that Marks was no longer a stockholder and would never discover their scheme. As they intended, after Marks' shares were accepted in the Tender Offer, he no longer received information concerning LRN and was unaware that the Company was sold to Leeds for 5.2x more than he received in the Tender Offer.[22]

Around September 28, 2020, Marks and his Chancery counsel determined the "allegation in the first five sentences of Paragraph 6 of the Supplement and the

---

[19] *Id.* at ¶ 28.
[20] *Id.* at ¶ 30.
[21] As noted above, the "Defendants" in the Court of Chancery action are the Plaintiffs in this litigation.
[22] *Id.* at ¶ 31 (quoted directly, without correction, from Complaint; emphasis omitted).

inferences drawn therefrom were incorrect."[23]  Marks then informed Plaintiffs, on September 28, 2020, "that he would be amending and supplementing his response to the interrogatory directed at paragraph 6 to correct them."[24]  On September 28, 2020, one day after acknowledging the incorrect statement, Marks, through Chancery counsel, sent the reporters of *The Financial Times* a complete set of the court filings of the shareholder litigation.[25]  An article was published on October 4, 2020, which, according to Plaintiffs, "echoed Marks' false and defamatory allegations" that Plaintiffs "schemed" and "cheated" him.[26]

Plaintiffs repeatedly demanded Marks withdraw the Statement from his Chancery pleadings and correct the record.  On October 13, 2020, Marks filed a Motion to Amend and removed the first five sentences of the Statement.[27]  Marks never provided *The Financial Times* with the Amendment.

This suit was filed on September 27, 2021.[28]  In lieu of an Answer, Marks moved to dismiss.[29]  Prior to the resolution of that motion, this matter was stayed pending resolution of the related Chancery action, based upon the representations by

---

[23] *Id.* at ¶ 37 (emphasis omitted).
[24] *Id.*
[25] *Id.* at ¶ 39. *See also* D.I. 54. Ex. F at Ex. B.
[26] Compl. at ¶ 7 (quoted without correction).
[27] *Id.* at ¶ 41.
[28] *Feldman, et. al. v. Marks*, N21C-009-206 DJB, D.I. 1.
[29] *Id.*, D.I. 18.

counsel that resolution of that action may resolve this litigation.[30] The stay was lifted on January 5, 2024, when counsel relayed the outcome of the September 2023 settlement hearing in the Court of Chancery and represented that this case was now ready for adjudication.[31]

On September 7, 2023, during the settlement hearing, the Court of Chancery disqualified Marks as a potential class representative. In so doing, the Court stated:

> Simply put, Marks made false statements in a sworn pleading submitted to this Court by counsel. His supplement to the complaint contained the false allegation that defendants had accepted certain belatedly tendered shares of stock in a conscious effort to prevent Marks from discovering LRN's eventual sale.
>
> After learning his pleadings contained false statements, Marks's counsel sent his false supplement to *The Financial Times*. Marks later withdrew the allegations that he tendered after the deadline and that LRN's acceptance of his shares was part of a scheme to ensure he did not discover he had been cheated. Defendants sued him for defamation in Superior Court.
>
> Based on counsel's representations in today's hearing, it sounds like settlement negotiations were conditioned on obtaining a retraction from Marks and that the $10 million and releases did not serve to close the deal until that retraction was obtained. Indeed, within the terms of this class action settlement, Marks promised to retract his supplement and the defendants promised to dismiss the Superior Court action and a release of claims related to the Superior Court action. In this way, Marks obtained a private benefit by reason of his power resulting from his representative status.[32]

---

[30] *Id.*, D.I. 33, 34.
[31] *Id.*, D.I. 38, 43.
[32] Pl. Opp. Ex. D at 78-79.

6

On February 26, 2024, Marks filed his Opening Brief in support of Defendant's Motion for Summary Judgment.[33] On March 27, 2024, Plaintiffs submitted their opposition.[34] On April 11, 2024, Marks filed his Reply.[35]

Similarly, on February 26, 2024, Plaintiffs filed their Opening Brief in Support of Motion for Partial Summary Judgment.[36] On April 10, 2024, Marks submitted his opposition.[37] On April 25, 2024, Plaintiffs filed their Reply.[38] These motions engulfed the pending Motion to Dismiss and will determine that pending matter. All arguments made within that motion, and its opposition, will be resolved in conjunction with the instant cross motions for summary judgment. Oral argument was held on the cross motions on June 18, 2024.[39] This is the Court's decision on all matters.

---

[33] Marks's Opening Brief in support of Defendant's Motion for Summary Judgment. ("Def. Motion") D.I. 53.
[34] Plaintiffs' Opposition to Defendant's Motion for Summary Judgment ("Pl. Opp.") D.I. 57.
[35] D.I. 62.
[36] Plaintiffs' Opening Brief in Support of Motion for Partial Summary Judgment. ("Pl. Motion") D.I. 54.
[37] Marks's Opposition to Plaintiffs' Motion for Partial Summary Judgment ("Def. Opp.") D.I. 59.
[38] D.I. 65.
[39] D.I. 68.

## III. STANDARD OF REVIEW

When reviewing a motion for summary judgment under Superior Court Civil Rule 56, the Court must determine whether any genuine issues of material fact exist.[40] The moving party bears the burden of showing that there are no genuine issues of material fact to be entitled to judgment as a matter of law.[41] The Court will not grant summary judgment if it appears that there is a material fact in dispute or that further inquiry into the facts would be appropriate.[42] In determining whether a genuine issue of material fact exists, the Court must view the facts in the light most favorable to the non-moving party.[43]

The standard for summary judgment is not altered when the parties have filed cross-motions for summary judgment.[44] Cross-motions for summary judgment are not *per se* concessions that no genuine issue of material fact exists.[45] "But, where cross-motions for summary judgment are filed and neither party argues the existence of a genuine issue of material fact, the Court shall deem the motions to be the

---

[40] *Radulski v. Liberty Mut. Fire Ins. Co.*, 2020 WL 8676027, at *3 (Del. Super. Oct. 28, 2020).

[41] *Id.*

[42] *Legion Partners Asset Mgmt., LLC v. Underwriters at Lloyds London*, 2021 WL 6621168, at *6 (Del. Super. Sept. 30, 2021).

[43] *Capano v. Lockwood*, 2013 WL 2724634, at *2 (Del. Super. Feb. 20, 2013).

[44] *Legion*, 2021 WL 6622168, at *6.

[45] *United Vanguard Fund, Inc. v. TakeCare, Inc.*, 693 A.2d 1076, 1079 (Del. 1997).

equivalent of a stipulation for decision on the merits based on the [submitted record]."[46]

## IV. ARGUMENTS

### A. MARKS'S MOTIONS

Marks moves for summary judgment on the premise that "Plaintiffs cannot demonstrate that [Marks] made the statement with the required intent to harm his reputation because there was no intent."[47] Marks argues his Chancery filing was amended after recognizing his misstatement.[48] Further, Marks contends that *The Financial Times'* reporter who received the court filing "would have known said statement was made to provide further factual grounds for Defendant's Motion to Intervene."[49] Marks continues that the reader "could not possibly have understood Defendant's statement to be made to injure Plaintiffs' reputation."[50] Last, Marks contends that even, if the Court finds that Plaintiffs have satisfied every element of

---

[46] *Radulski*, 2020 WL 8676027, at *4 (internal quotation marks omitted).
[47] Def. Motion at 15.
[48] *Id.*
[49] *Id.* at 17.
[50] *Id.* "The only individuals who could have possibly 'saw, heard, or read' the full 'defamatory statement' are those employed by The Financial Times, not the readers of that publication or the general public as a whole. The 'defamatory statement' should not be conflated with the subsequently published article, as that article only used two words from the 'defamatory statement' at issue." *Id.* at 13.

their defamation claim, Marks's "statement is not actionable because it is protected by [either absolute or conditional] privilege."[51]

Marks moves to dismiss based upon a lack of personal jurisdiction.[52] Marks claims the statute of limitations for California – his state of residence – should apply and this suit should be dismissed as untimely, as the statute of limitations in California has run.[53] Marks additionally claims that the doctrine of forum *non conveniens* mandates the Court decline jurisdiction, as the only contact Marks has to Delaware consists of the shareholder litigation.[54]

In opposition, Plaintiffs assert, "as a matter of law, there is no way the two reporters (or any reasonable reader) could have understood the false statements at issue in this case as anything other than defamatory."[55] Plaintiffs emphasize that Marks did not issue a retraction to *The Financial Times* and amending the court filings "has no bearing at all on whether the statements would be understood as defamatory."[56] Plaintiffs additionally respond that the two affirmative defenses of privilege are not available to Marks, because he sent court filings to the news media.[57]

---

[51] Def. Motion at 18.
[52] D.I. 18.
[53] *Id.*
[54] *Id.*
[55] Pl. Opp. at 7.
[56] *Id.* at 8.
[57] *Id.* at 9.

With respect to the Motion to Dismiss, Plaintiffs argue personal jurisdiction results from the alleged defamatory Statement at issue having been made in Delaware. Plaintiffs reference the long history of Delaware courts granting a liberal construction to the Long Arm Statute, favoring the choice of forum selected by a plaintiff. Further, Plaintiffs argue that Marks availed himself of the privileges of filing suit in Delaware, albeit in the Court of Chancery, and cannot now argue lack of personal jurisdiction in a related suit. Finally, Plaintiffs assert Marks has not established the elements required for a forum *non conveniens* declination of jurisdiction.[58]

## B. PLAINTIFFS' MOTION

Plaintiffs move for partial summary judgment on the issue of Marks's liability, and ask the Court to allow a jury to determine damages.[59] Plaintiffs assert judicial estoppel bars Marks from relitigating the same facts that were already raised and decided in the Court of Chancery.[60] Plaintiffs argue this Court should apply collateral estoppel to findings made by the Court of Chancery as it proves Marks is liable for defamation as a matter of law.[61]

---

[58] D.I. 20.
[59] *See* Pl. Motion., D.I. 54.
[60] *Id.* at 14.
[61] *Id.* at 10.

In opposition, Marks argues that when the Court of Chancery rejected Marks as a potential class representative, "no claims [were] fully litigated, and no definitive findings of fact [were] made."[62] Marks continues that he would not derive an unfair advantage if this Court were to rule on the defamation allegations.[63] As in his own summary judgment motion, Marks again argues the Statement "is not defamatory because Plaintiffs failed to properly identify the third party the statement was published to and how that statement was understood."[64]

## V. ANALYSIS

### A. JURISDICTION

Jurisdiction is proper over Marks.[65] When jurisdiction is challenged, the burden is on the Plaintiff to establish the basis for jurisdiction over the non-resident defendant.[66] For a court to find jurisdiction over a non-resident defendant, the court must first consider whether Delaware's long arm statue confers jurisdiction and then must decide whether conferring jurisdiction over the non-resident comports with the Due Process Clause of the Fourteenth Amendment.[67] In reviewing a motion to

---

[62] Def. Opp. at 11, D.I. 59.
[63] *Id.*
[64] *Id.* at 16.
[65] 10 *Del. C.* § 3104(c)(3).
[66] *Herman v. BRP, Inc.*, 2015 WL 1733805, at *3 (Del. Super. 2015).
[67] *Id.*

12

dismiss, the court is to review the allegations in the light most favorable to the non-moving party.[68]

Marks argues the long arm statute does not apply to him and his filing in the shareholder litigation in the Court of Chancery did not avail him of personal jurisdiction in this matter. Marks continues that the doctrine of forum *non conveniens* prohibits a finding of personal jurisdiction over him in Delaware, therefore California law applies. Should California law apply, this suit was filed in violation of California's one-year statute of limitations and must be dismissed. Plaintiffs retort that the Delaware long arm statute applies, as Marks's alleged tort was committed in Delaware. Therefore, the Delaware statute of limitations controls and forum *non conveniens* does not preclude a finding of jurisdiction.

Delaware's long arm statute confers personal jurisdiction over a non-resident if one "[c]auses tortious injury in the State by an act or omission in this State."[69] Consistent with Delaware's practice of liberally construing the long arm statute, there is a sufficient nexus between the filing of the Statement in the Court of Chancery, in the very action Marks initiated, and the tort of defamation alleged here to confer personal jurisdiction over Marks.[70]

---

[68] Super. Ct. Civ. R. 12(b)(6).
[69] 10 *Del. C* § 3104(c)(3).
[70] *See Herman*, 2013 WL 1733805 at *3.

Due Process is satisfied as Marks's minimum contacts have been established. The "notions of fair play and substantial justice" are not offended in conferring jurisdiction over Marks given that he availed himself of the judicial process in Delaware in the Court of Chancery.[71]  Finally, forum *non conveniens* does not demand a declination of personal jurisdiction over Marks.  Following the practice of this jurisdiction to heavily favor a plaintiff's choice of forum, Marks has not shown the overwhelming hardship to invoke this doctrine.  Marks's claim of hardship is undermined by his election to intervene in filed litigation in Delaware's Court of Chancery.  Marks is actively engaged in that shareholder litigation and has not established any hardship as a result.  Jurisdiction is proper here.

## B. DEFAMATION

Under Delaware law, to state a claim for defamation, the plaintiff must establish that: "1) the defendant made a defamatory statement; 2) concerning the plaintiff; 3) the statement was published; and 4) a third party would understand the character of the communication as defamatory."[72]  "Whether or not a statement is defamatory is a question of law."[73]  A statement is made with actual malice when it

---

[71] *See Intern'l Shoe Co. v. State of Washington, et. al.*, 326 U.S. 310, 315-316 (1945); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).
[72] *Page v. Oath Inc.*, 270 A.3d 833, 842 (Del. 2022), *cert. denied*, 142 S. Ct. 2717 (2022), citing *Doe v. Cahill*, 884 A.2d 451, 463 (Del. 2005).
[73] *Doe*, 884 A.2d at 463.  "A statement is defamatory when it 'tends so to harm the reputation of another as to lower him in the estimation of the community or to

is made "with knowledge that it was false or with reckless disregard of whether it was false or not."[74]

Defamation *per se* includes statements which: "(1) malign one in a trade, business or profession," and those that "(2) impute a crime."[75] "When a statement falls within one of the defamation *per se* categories, 'the law presumes damages.'"[76] Libel actions, a written publication which defames a plaintiff, is actionable without special damages, whether the defamatory nature is apparent on the face of the statement or only by reference to extrinsic facts.[77]

Marks's argument centers on the fourth element of defamation, claiming that a third party would not have understood the Statement as defamatory. Marks acknowledges Plaintiffs can satisfy the other elements. Marks believes Plaintiffs must state "with particularity who exactly saw, heard, or read the statement or how those individuals actually understood the statement."[78] The law does not support this supposition. Under Delaware law, Plaintiffs are not required to show the third party "actually understood the statement" to be defamatory. In Delaware, a plaintiff must only prove that a third party "*would understand*" the nature of the statement as

---

deter third persons from associating or dealing with him.'" *Cousins 8 v. Goodier*, 283 A.3d 1140, 1148 (Del. 2022) (quoting Rest. Torts § 559 (1938)).

[74] *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964).

[75] *Spence v. Funk*, 396 A.2d 967, 970 (Del. 1978).

[76] *Id.* at 970 (internal citation omitted).

[77] *Id.* at 971.

[78] Def. Motion at 16.

defamatory.[79]  Plaintiffs are in the business of providing ethical advice to large corporations.  It can go without saying that being maligned in this fashion is a detriment to their character and business.  Because the Statement here impugned Plaintiffs in their business and alleged Plaintiffs committed a crime, the Statement constitutes defamation *per se*.[80]

Plaintiffs have satisfied all elements of defamation. Marks made a defamatory statement concerning Plaintiffs.  That statement could potentially deter others from associating with Plaintiffs or investing in their new endeavors.  The Statement was published when Marks sent the court filings to *The Financial Times* knowing he was going to amend his untrue statement.  Finally, there can be no "neutral" or non-defamatory interpretation of the Statement, nor does Marks successfully provide such an interpretation.  There is no neutral or flattering way to interpret that Plaintiffs "cheated" and "schemed" against Marks.

## C. PRIVILEGE

An affirmative defense may exist to a *prima facie* case for defamatory statements "made in certain contexts where there is a particular public interest in unchilled freedom of expression."[81]

---

[79] *See Page,* 270 A.3d at 842.
[80] D.I. 51, Ex. C.  The published article is still available to the public:
https://www.ft.com/content/265cac46-30b3-49ad-a0a7-e902e285826a
[81] *Barker v. Huang,* 610 A.2d 1341, 1345 (Del. 1992).

The absolute privilege is a common law rule, long recognized in Delaware, that protects from actions for defamation statements of judges, parties, witnesses and attorneys offered in the course of judicial proceedings so long as the party claiming the privilege shows that the statements issued as part of a judicial proceeding and were relevant to a matter at issue in the case. However, statements made outside of the course of judicial proceedings, such as those made during a newspaper interview concerning judicial proceedings, are not accorded the protection of the absolute privilege."[82]

"A qualified privilege is often one which is related to the republication of material originally made by a person on a privileged occasion."[83] "The existence of a qualified privilege is conditioned on the absence of express malice, of any knowledge of falsity, or of any desire to cause harm."[84]

The law is clear that distributing court filings to the news media does not constitute a privileged occasion.[85] Marks, of course, cannot be held liable for defamation solely on the Statement submitted to the Court of Chancery under absolute privilege. But Marks voluntarily sent court filings to *The Financial Times* one day after acknowledging the filing includes false statements. Marks could have easily provided the reporters with the amended filing or informed the reporters of his intention to amend the supplement. He did not. As a result, Plaintiffs established Marks acted with knowledge of falsity when he sent the reporters the court filings.

---

[82] *Id.* (internal citations removed).
[83] *Short v. News-J. Co.*, 205 A.2d 6 (Del. Super. Jan. 19, 1965), *aff'd*, 58 Del. 592, 212 A.2d 718 (1965).
[84] *Id.*
[85] *Barker,* 610 A.2d 1343.

As such, absolute privilege and conditional privilege do not shield Marks from liability.

## D. ESTOPPEL

In determining whether collateral estoppel applies, the court must determine whether:

> (1) The issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.[86]

Judicial estoppel is meant to "protect the integrity of the judicial proceedings."[87] "Judicial estoppel also prevents a litigant from advancing an argument that contradicts a position previously taken that the court was persuaded to accept as the basis for its ruling."[88]

Here, collateral estoppel does not apply. Although the Court of Chancery found Marks's Statement to be false, that finding is not determinative. The Court of Chancery examined the Statement in a different context than presented here: the determination of whether Marks was fit to serve as a class representative. As such,

---

[86] *Betts v. Townsends, Inc*., 765 A.2d 531, 535 (Del. 2000). The Superior Court can apply collateral estoppel to findings made by the Court of Chancery. *See Stephenson v. Capano Dev., Inc*., 462 A.2d 1069, 1075 (Del. 1983).
[87] *Motorola Inc. v. Amkor Tech., Inc*., 958 A.2d 852, 859 (Del. 2008).
[88] *Id*.

the defamation *per se* claim has not been fully litigated. However, the Court of Chancery's finding in conjunction with the record make it clear Marks knowingly sent false statements to *The Financial Times*. Plaintiffs have pled and proven the four elements of defamation which warrants for summary judgment in their favor; the Court need not fully consider the estoppel argument because the defamation elements have been established.

## VI. CONCLUSION

For the reasons stated above, Marks's Motions to Dismiss and Summary Judgment are **DENIED** and Plaintiffs' Motion for Partial Summary Judgment is **GRANTED**.

_____
Danielle J. Brennan, Judge

cc:   All parties LexisFile&Serve

19